CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 17 2019

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| BRIAN PITSENBARGER, | ) | CASE NO. 7:18CV00050 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| THOMAS REDMAN, ET AL., | ) | By: Hon. Glen E. Conrad |
| | ) | Senior United States District Judge |
| Defendants. | ) | |

The plaintiff, Brian Pitsenbarger, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging that prison officials caused him to serve a longer term of confinement in violation of due process. He has also moved for leave to supplement his complaint with additional exhibits and argument, which the court will grant. After review of the record, the court concludes that the defendants' motion to dismiss the complaint as supplemented must be granted.

## I. Background

Pitsenbarger's claims are based on events that occurred when he was an inmate a Cold Springs Correctional Unit.[1] Liberally construing Pitsenbarger's § 1983 amended complaint and exhibits, he alleges that on September 19, 2017, Defendants Perry and Alistock allowed Officer Randozzo to use a hand-held drug testing device on Pitsenbarger, in violation of Virginia Department of Corrections ("VDOC") procedures. Under VDOC Operating Procedure ("OP") 841.5(III), a hand-held testing device was defined as "[a] portable drug testing device, such as a test slide, requiring no calibration or formal instrumentation." Compl. Ex. A, ECF No. 1-1. OP

---

[1] Pitsenbarger is now confined at Pocahontas Correctional Center.

841.5(IV)(C)(2)(b) provided that "[i]nstitutions are not authorized to use a hand held testing device except" when staff observed physical symptoms suggesting drug use or intoxication or on inmates with certain medical conditions. Id. OP 845.1(IV)(C)(2)(e) identified an exception, stating that "[h]and held testing devices may be used to test particular substances," including Suboxone. Officer Randozzo reported that the test performed on Pitsenbarger on September 19, 2017, was positive for Suboxone. See Compl. Ex. B, ECF No. 1-1. Although Pitsenbarger claimed that he was taking medications that could cause a false positive on a drug test, no one wrote this information down on a chain of custody form. That same day, Randozzo charged Pitsenbarger with a disciplinary offense of being under the influence of an unprescribed drug.[2]

At the disciplinary hearing on September 26, 2017, Defendant Houff told Pitsenbarger that he could not have the "lab results" from the test, as he had requested, although there allegedly were no lab results. Am. Compl. 1, ECF No. 25. Houff found Pitsenbarger guilty of the offense, citing the positive test results and testimony from Randozzo as the evidence on which he had relied.[3] Superintendent Redman allegedly failed to respond to Pitsenbarger's appeal of this outcome, thus depriving him of the opportunity to appeal to the regional administrator.

Pitsenbarger denies that he had taken any unlawful substances on September 19, 2017. Thereafter, the Institutional Classification Authority ("ICA") conducted a review of Pitsenbarger's good time earning level with him present. Mot. Am. Compl. Ex. D, ECF No. 25. Allegedly because of the positive drug test, the ICA changed his good time earning level from a

---

[2] The Disciplinary Offense Report ("DOR") stated that Pitsenbarger tested positive for Suboxone, and a second drug test performed immediately thereafter showed the same result.

[3] The plaintiff's exhibits indicate that the disciplinary penalty imposed for the offense was the loss of pay for 60 "unpaid work hours." Compl. Ex. B, ECF No. 1-1. Pitsenbarger's complaint focuses on the subsequent reduction in his good time earning rate, however, and does not challenge the validity of the disciplinary penalty itself.

2

1 to a 2, which caused his projected release date to be pushed back from October 15, 2019, to November 18, 2019. See id. at 2, Ex. E (noting that "projected dates are based on the assumption that the offender will continue to earn good time at the present earning level" and a future "change in good time earning level . . . may cause the projected dates to change").

Pitsenbarger filed this § 1983 lawsuit in February 2018 against Redman, Alistock, Perry, and Houff, seeking monetary and injunctive relief. He complains that these defendants allowed the use of results from a hand-held testing device as evidence to support his drug-related disciplinary charge and his classification change, in violation of prison policy and due process. The defendants have filed a motion to dismiss, and Pitsenbarger has responded, making the matter ripe for disposition.

## II. Discussion

A district court should dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure if, accepting all well-pleaded allegations in the complaint as true and drawing all reasonable factual inferences in the plaintiff's favor, the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555.[4] To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

---

[4] The court has omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

3

As an initial matter, Pitsenbarger has no viable § 1983 claim based on allegations that the defendants violated prison policy by allowing use of a hand-held testing device or by allowing use of its results to support a disciplinary charge. It is well established that state officials' alleged violations of state policies and regulations are not sufficient to support a claim that the plaintiff was deprived of constitutionally protected rights. See Riccio v. Cty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that state's failure to abide by its own procedural regulations is not a federal due process issue). Thus, the court must grant the motion to dismiss as to all claims that the defendants violated prison rules.

Pitsenbarger's § 1983 claim that Redman deprived him of his right to pursue a disciplinary appeal is also without merit. There is no constitutional right to an appeal from the disciplinary factfinder's decision. See, e.g., Westbrook v. Koch, No. 1:16CV480 (LMB/IDD), 2017 WL 2589963, at *6 (E.D. Va. June 13, 2017), appeal dismissed, No. 17-6854, 2017 WL 6803019 (4th Cir. Sept. 5, 2017) ("[I]t is widely recognized that an inmate has no right to appeal a disciplinary board's decision.") (citing other cases). Moreover, Pitsenbarger's own submissions to the court indicate that Redman responded to his disciplinary appeal on October 3, 2017. See Verif. Stmt. Attach. 5-6, ECF No. 2. Redman upheld the finding of guilt, noting that the drug test performed on Pitsenbarger on September 19, 2017, was authorized under the prison's policy. Pitsenbarger ultimately appealed Redman's ruling to the regional administrator, who found no procedural errors and upheld the guilty finding. Pl.'s Ex. D, at 2, ECF No. 9.

Pitsenbarger's primary contention is that all of the defendants allowed the use of hand-held test results to cause the one-month shift in his release date, thus depriving him of a "liberty interest" without due process. While having to serve another month in prison is no small matter,

the court cannot find that Pitsenbarger received this adjustment to his term of confinement in violation of his constitutional right to due process.

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citations omitted). To prove a protected liberty interest here arising from a state law or regulation, Pitsenbarger must identify (a) "a basis for an interest or expectation in state regulations" that hand-held testing devices will not be used in inmate drug testing; and (b) show that "denial of this state-created interest resulted in an atypical and significant hardship to him." Prieto, 780 F.3d at 250. Only if Pitsenbarger makes both showings does the Due Process Clause require a particular measure of procedural protection before he can be deprived of his liberty interest. Sandin v. Conner, 515 U.S. 472, 484 (1995).

The court concludes that Pitsenbarger has not made these showings. First, the regulation in effect in September 2017 expressly authorized the use of a hand-held testing device to test for Suboxone, the drug for which he tested positive. Thus, this regulation did not create an expectation that the results of a hand-held drug testing device would not be used to inform prison disciplinary or classification decisions, as they were here.

In any event, the court also cannot find that Pitsenbarger has stated facts to show that a decrease in an inmate's rate of earning good conduct time is a harsh or atypical departure from

5

the expected conditions in prison, as required to prove a constitutionally protected liberty interest under Sandin and Prieto. On the contrary, Pitsenbarger's own exhibits indicate that the ICA could readjust his good time earning level at his next classification status review and change his projected release date yet again. Furthermore, it is well established that a Virginia inmate has no constitutionally protected liberty interest in any particular rate of earning good conduct time against his sentence. Mills v. Holmes, 95 F. Supp. 3d 924, 935 (E.D. Va. 2015) (holding that Virginia inmates have no protected liberty interest in good conduct allowance earning level) (citing West v. Angelone, 165 F.3d 22 (4th Cir. 1998) (unpublished) ("Inmates have no protected liberty interest in remaining in or being assigned to a particular good conduct allowance level. . . ."); James v. Robinson, 45 F.3d 426 (4th Cir. 1994) (same)).

### III. Conclusion

For the stated reasons, the court concludes that Pitsenbarger's motion for leave to supplement shall be granted, and that defendants' motion to dismiss the complaint as supplemented must be granted.[5] An appropriate order will issue herewith.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 17th day of January, 2019.

/s/ Jen Conrad
Senior United States District Judge

---

[5] Pitsenbarger complains that amendments to the VDOC drug testing procedure in 2018 (after he filed this lawsuit) somehow indicate an attempt to cover up the defendants' alleged policy violations. See Letter Ex. I, ECF No. 28. Having reviewed the amended procedure, the court cannot find that the changes have any relationship to this case or the reasons behind the court's decision to grant the defendants' motion to dismiss.